IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| CHARLES SCOTT SIMONDS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CV 108-034 |
| | ) | |
| BRUCE CHATMAN, Warden,[1] | ) | |
| | ) | |
| Respondent. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Petitioner, an inmate incarcerated at Dooly State Prison,[2] originally brought the captioned-case as a petition for a writ of mandamus to challenge a decision of the Georgia State Board of Pardons and Paroles ("the Board") to apply "sex offender laws" requirements to Petitioner's parole requirements. (Doc. no. 2). However, as Petitioner challenged the validity of the Board's decision to apply the "sex offender laws" to his parole conditions, the Court determined that Petitioner actually sought relief pursuant to 28 U.S.C. § 2241. Therefore, upon giving Petitioner notice, the Court re-characterized the petition as one filed pursuant to 28 U.S.C. § 2241. (Doc. no. 3). Petitioner submitted a new petition (doc. no.

---

[1]Inasmuch as Petitioner seeks his immediate release from a more restrictive level of confinement, the proper party respondent in this action should be Petitioner's immediate custodian, in this case Bruce Chatman, Warden at Dooly State Prison. Rumsfeld v. Padilla, 524 U.S. 426, 434-35 (2004). The Clerk is **DIRECTED** to substitute "Bruce Chatman, Warden" as the party respondent in this case.

[2]At the time Petitioner filed the above-captioned petition, he was incarcerated at Augusta State Medical Prison.

5), and Respondent was directed to answer the petition (doc. no. 8). Respondent filed an answer, as well as a motion to dismiss. (Doc. nos. 11, 12). Respondent argues that the instant petition should be dismissed for failure to exhaust state court remedies. (Doc. no. 12). Upon prompting by the Court, Petitioner filed his opposition to Respondent's motion to dismiss. (Doc. nos. 13, 14). For the reasons herein, the Court **REPORTS** and **RECOMMENDS** that the motion to dismiss be **GRANTED**, that the instant petition be **DISMISSED**, and that this action be **CLOSED.**

I. **BACKGROUND**

In September 1996, Petitioner was convicted of two counts of attempted kidnaping. (Doc. no. 11, pp. 4, 5, 17; doc. no. 12, p. 3). Petitioner was sentenced to eight years of incarceration on each count, to be served consecutively. His conviction and sentence were affirmed on appeal on March 13, 1998. (Doc. no. 11, p. 13).

In January 1998, the Parole Decision Guidelines were applied to Mr. Simonds's sentence. (Doc. no. 11, Ex. 1, ¶ 7). The Guidelines recommendation was for him to serve 64 months, or until April 2001. (Id.). However, a majority of the Board members voted to deviate from the recommendation and determined that Petitioner would serve his entire sentence.[3] (Id.). Petitioner was purportedly notified of the Board's decision on March 9, 1998. Petitioner was reconsidered for parole in July 2003. (Id. ¶ 9). At that time, a majority of the Board members voted to rescind the prior decision denying Petitioner parole

---

[3] The Board maintains the discretion to disagree with a recommendation under the Guidelines System and make an independent decision to deny parole or establish a Tentative Parole Month at any time prior to the expiration of the sentence. (Doc. no. 11, Ex. 1, ¶ 8 (citing Ga. Comp. R and Regs. R. 475-3-.5(5))).

2

entirely and established a tentative parole month for December 2005. (Id.). The Board also attached several restrictions to Petitioner's parole conditions. These requirements include, among other things, that Petitioner is prohibited from living with anyone under the age of 18 who is not his biological or adopted child over whom he has lawful custody or court-approved visitation rights, and that he is prohibited from residing within 1,000 feet of a school, church, park, or other area were minors congregate. (Ex. 1, ¶ 10). Petitioner refers to these requirements as the requirements imposed by the "sex offender laws."[4] (Doc. no. 10, p. 1). Petitioner will not be granted parole until a suitable residence that meets these conditions have been verified by parole staff.[5] (Ex. 1, ¶ 10). Petitioner was notified of the Board's decision by letter dated August 7, 2003. (Id. ¶ 9).

When Petitioner was given his tentative parole month, he purportedly paid a fee to enroll himself into a transitional house. (Doc. no. 10, p. 3). However, the location of this transitional house does not comply with the requirements imposed on Petitioner's parole conditions. (Doc. no. 1, pp. 1-3). Petitioner maintains that although the "sex offender laws" are applicable to people who have been convicted of kidnaping, they should not be applied

---

[4]Respondent "denies that it is forcing a sex conviction residence as a requirement for being paroled." (Doc. no. 11, p. 3). Respondent alleges that the conditions attached to Petitioner's parole are based upon the nature and circumstances of Petitioner's case, including the ages of the victims involved in his underlying criminal case, and Petitioner's criminal background. (Id.).

[5]The Board learned that Petitioner had been arrested in 1992 for first degree sexual abuse in West Virginia. (Doc. no. 11, Ex. 1, ¶ 10). Because of the West Virginia arrest and the circumstances of his current offense (the indictment accuses Petitioner of trying to entice two boys, 5 and 7 years old, into a motor vehicle without lawful authority), the Board determined that Petitioner's offenses had sexual overtones and his release on parole would be compatible with the welfare of society only if he was subject to special conditions of supervision. (Id. ¶¶ 6, 10).

3

to people who were convicted of attempted kidnaping. (Id.). Petitioner further maintains that but for the imposition of the "sex offender laws" as a condition of his parole, he would have already been paroled. (Id.). Thus, according to Petitioner, the Board is unfairly refusing to parole Petitioner until he complies with the "sex offender law" requirements of his parole conditions.[6] (Id. at 3). Of note, Petitioner has not previously raised this issue in any other court.[7]

Respondent contends that Petitioner has not exhausted his claims as he has not raised these claims in either a mandamus or a writ of habeas corpus in any state court, and thus, the instant petition should be dismissed pursuant to 28 U.S.C. § 2254. (Doc. no. 12, pp. 4-8). Petitioner counters that he was notified of the "sex offender law" requirements two and one-half years after the restrictions were imposed on his parole conditions. (Doc. no. 5, p. 3; doc. no. 14, p. 2). Thus, Petitioner argues that because of this two and one-half year delay, he was "unable" to file a petition for state habeas relief. (Doc. no. 5, p. 3; doc. no. 14, p. 2).

## II. DISCUSSION

As the Court has already noted (doc. no. 3), an attempt to challenge the decision of

---

[6]Petitioner also argues that by applying the "sex offender laws" as a requirement for his parole, the Board has violated the *ex post facto* clause of the Constitution. (Doc. no. 6, p. 2).

[7]In May 2008, Petitioner filed a Writ of Mandamus in the Superior Court of Wayne County. (Doc. no. 11, Ex. 2). In this Writ of Mandamus, Petitioner does not challenge the conditions placed on his parole; rather, he argues that he had an unfair trial in his underlying criminal case, and, therefore, he seeks a new trial. (Id.). The record also includes a letter written by the Chief Assistant District Attorney, Mr. Johnson, in which Mr. Johnson writes, "... I will not write to the Department of Corrections on [Petitioner's] behalf. If [Petitioner] feels that the DOC has improperly classified him under special conditions for sex offenders, he needs to work that out with them." (Doc. no. 6, Ex. 2).

4

a state parole board is subject to the provisions of 28 U.S.C. § 2254.[8] See Peoples v. Chatman, 393 F.3d 1352, 1353 (11th Cir. 2004) (*per curiam*) (federal habeas petition challenging state parole revocation subject to AEDPA one-year statute of limitations); Thomas v. Crosby, 371 F.3d 782, 784 (11th Cir. 2004) (petition challenging state parole board's determination regarding parole eligibility subject to § 2254). That is the case here--Petitioner is serving a sentence imposed by a state court. Thus, the instant petition is subject to all the requirements applicable to § 2254 proceedings. Thomas, 371 F.3d at 787 ("There is no merit to Appellant's argument that § 2254 does not apply where a state prisoner challenges parole decisions rather than court rulings.").

Effective April 24, 1996, the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, amended the statute governing habeas corpus petitions for state prisoners seeking relief in the federal courts. The AEDPA preserves the traditional exhaustion requirement, which requires a district court to dismiss habeas claims that the petitioner has a right to raise, by any available procedure, in state court. 28 U.S.C. §§ 2254(b)(1)(A) & (c). "An applicant shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by *any* available procedure, the question presented." Id. § 2254(c) (emphasis added). In reference to this requirement, the Supreme Court has held that a state

---

[8]The Court is aware that an action seeking declaratory or injunctive relief regarding parole *procedures*, as opposed to an attempt to attack the validity of a parole board's decision, may lie under 42 U.S.C. § 1983 rather than § 2254. See Wilkinson v. Dotson, 544 U.S. 74, 81-82 (2005). However, Petitioner has not filed a civil rights complaint and seeks his immediate release from a more restrictive level of confinement--relief which "lies at the core of habeas corpus." Id. at 82. Accordingly, his petition is "governed by both 28 U.S.C. § 2241 and 28 U.S.C. § 2254." Thomas v. Crosby, 371 F.3d 782, 784 (11th Cir. 2004).

5

inmate is deemed to have exhausted his state judicial remedies when he has given the state courts, or they have otherwise had, a fair opportunity to address the state inmate's federal claims. Castille v. Peoples, 489 U.S. 346, 351 (1989). "In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999).

Moreover, giving the state courts an opportunity to act on a petitioner's claims includes allowing the state courts to complete the appellate review process. As the Supreme Court explained:

> Because the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts, we conclude that state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.

Id. at 845. This "one full opportunity" includes pursuing discretionary review with the highest available appellate court where the highest court of the state has not opted out of this requirement.[9] Id.

The AEDPA, however, contains two significant changes bearing on the exhaustion requirement. First, the AEDPA eliminates a district court's ability to infer a state's waiver of exhaustion from the state's failure to expressly invoke the exhaustion requirement. 28 U.S.C. § 2254(b)(3). Under the revised statute, a waiver can be found only if the state, through counsel, expressly waives the requirement. Id. Second, the AEDPA confers

---

[9]In Georgia, on direct appellate review, "'a litigant shall not be required to petition for rehearing and certiorari following an adverse decision of the Court of Appeals in order to be deemed to have exhausted all available state remedies' . . . ." Hills v. Washington, 441 F.3d 1374, 1375 (11th Cir. 2006) (*per curiam*) (quoting Ga. Sup. Ct. R. 40).

6

discretion upon the district courts to deny a habeas petition on the merits notwithstanding the petitioner's failure to exhaust the remedies available in state court. 28 U.S.C. § 2254(b)(2). When read in conjunction with the exhaustion requirement contained in § 2254(b)(1) and the waiver requirement contained in § 2254(b)(3), § 2254(b)(2) creates a confusing statutory framework within which the district courts must consider habeas petitions. Hoxsie v. Kerby, 108 F.3d 1239, 1243 (10th Cir. 1997) (recognizing § 2254(b)(2), standing alone, does not contain the standard for determining when a federal court should dismiss a petition on the merits instead of insisting on exhaustion); Gaylor v. Harrelson, 962 F. Supp. 1498, 1499-1500 (N.D. Ga. 1997) (same).

In deciding whether to require exhaustion or to address the merits, the Supreme Court's decision in Granberry v. Greer, 481 U.S. 129 (1987), provides some insight. In Granberry, the Supreme Court stated:

> If, for example, the case presents an issue on which an unresolved question of fact or of state law might have an important bearing, both comity and judicial efficiency may make it appropriate for the court to insist on complete exhaustion to make sure that it may ultimately review the issue on a fully informed basis. On the other hand, if it is perfectly clear that the applicant does not raise a colorable federal claim, the interests of the petitioner, the warden, the state attorney general, the state courts, and the federal courts will all be well served . . . if . . . the district court denies the habeas petition.[10]

Id. at 134-35; see also Atkins v. Singletary, 965 F.2d 952, 957 (11th Cir. 1992) (applying Granberry). Based on Granberry, the question of whether to require exhaustion in lieu of

---

[10]The Court recognizes that § 2254(b)(3) overrules Granberry to the extent that the state no longer may be deemed to waive the exhaustion requirement. The quoted passage, however, remains good law, and indeed, the policies underlying the passage are directly incorporated into § 2254(b)(2).

7

addressing the merits turns on whether it is "perfectly clear" that the petitioner has failed to state "even a colorable federal claim." Granberry, 481 U.S. at 134-35. In other words, if there is arguably a colorable claim, the Court should normally invoke the exhaustion requirement and dismiss the petition without prejudice.[11]

Moreover, as a matter of comity, the state courts must generally be afforded a fair opportunity to hear claims raised in a habeas corpus petition challenging custody resulting from a state court judgment. Picard v. Connor, 404 U.S. 270, 275 (1971). However, "[c]omity does not require that the federal courts decline to exercise jurisdiction in the face of allegations that the state courts have been presented with the merits of a claim for habeas corpus relief and have, for one reason or another, refused or been unable to act upon the claim." St. Jules v. Beto, 462 F.2d 1365, 1366 (5th Cir. 1972) (*per curiam*). In this regard, "[a] federal habeas petitioner need not wait until his state petitions for relief are exhausted, if the state court has unreasonably or without explanation failed to address petitions for relief." Hollis v. Davis, 941 F.2d 1471, 1475 (11th Cir. 1991); see also Reynolds v. Wainwright, 460 F.2d 1026, 1027 (5th Cir. 1972) (*per curiam*) (holding that an inordinate delay can, under certain circumstances, excuse exhaustion).

In the case at bar, Petitioner admits that he has not exhausted his state court remedies;

---

[11]When a petitioner files a "mixed" petition, including both exhausted and unexhausted claims, a court has the option of issuing a stay and holding the petition in abeyance to allow the petitioner to return to the state court to exhaust his remedies as to the unexhausted claims. Rhines v. Weber, 544 U.S. 269, 275-77 (2005). However, the stay and abeyance procedure should only be used in limited circumstances when a court determines there was good cause for the petitioner's failure to exhaust his claims first in state court. Id. at 277. Petitioner has not presented any exhausted claims in the present petition, and therefore, the stay and abeyance procedure is inapplicable.

he states that, by the time he learned of the restrictions placed on his parole requirements, he was "unable" to petition for state habeas corpus relief. Petitioner offers no explanation for why he was "unable" to raise these issues in state court. Indeed, in May of 2008, Petitioner was able to file a mandamus in state court challenging his current conviction and seeking a new trial. Additionally, the record shows that in January of 2008, Petitioner was aware of the restrictions applied to his parole conditions and was seeking assistance from the Assistant District Attorney. The record, however, does not show that Petitioner was "unable" to address this matter in state court prior to filing the instant action. Therefore, Petitioner has not alleged the requisite exhaustion of his available state remedies. See 28 U.S.C. § 2254(c). As the United States Supreme Court admonished, "[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." O'Sullivan, 526 U.S. at 842. Because Petitioner has failed to allege that he exhausted his available state remedies, the instant federal habeas corpus petition should be **DISMISSED** without prejudice.

### III. CONCLUSION

Accordingly, the Court **REPORTS** and **RECOMMENDS** that the motion to dismiss (doc. no. 12) be **GRANTED**, that the instant petition be **DISMISSED**, and that this action be **CLOSED**.

SO REPORTED AND RECOMMENDED this 17th day of February, 2009, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE